IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA 1877.

## Lehigh Coal & Navigation Co. *versus* Mohr.

1. The death of an agent acting under a letter of attorney containing a power of substitution, acts as a revocation of the authority of an agent substituted by him under the power.

2. V. was the agent of M. under a letter of attorney, which gave him general power to buy and sell stocks and collect interest, &c., with a power of substitution; he substituted his son to act for M. and soon after died: *Held*, that upon his death the son ceased to be attorney for M.

3. The mere fact that one who wrongfully pretends to act for another in transferring her securities has possession of her certificates of loan, and presents them to the officers of a company for transfer, does not of itself justify the officers in making a transfer of the loan on the books of the company.

4. The agent of M., who was a lady of advanced years living in Germany, sold one of her certificates of loan without authority, was allowed to transfer the loan on the company's books in 1870 and applied the proceeds to his own use, and nine months after the sale made a remittance to M. of pretended interest on the loan; M. did not know of the fraud and had no means of obtaining knowledge of it; she began suit against the company in 1873: *Held*, that she had not been guilty of such laches as would amount to a ratification of the act of the agent.

January 2d 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Appeal from a decree of the Court of Common Pleas, No. 3, of *Philadelphia county*: Of January Term 1875, No. 106.

This was a bill in equity, brought February 10th 1873, by Sophia Mohr against the Lehigh Coal & Navigation Company, to compel it to replace a certain certificate of loan of the company belonging to the plaintiff, or to pay the plaintiff the value thereof.

[Lehigh Coal & Nav. Co, v. Mohr.]

The bill averred that the plaintiff was the owner of a certificate of the loan of the defendant company for $2000; that the company had permitted one Vezin to transfer the loan without her authority; and that Vezin had applied the money to his own use and had absconded, and his estate had gone into bankruptcy. The bill prayed that the court should declare that the defendant participated in Vezin's breach of trust and prayed a decree that upon assignment to the defendant of the plaintiff's claim against Vezin's estate in bankruptcy, the defendant should pay the plaintiff the cash value of her certificate of loan.

The answer set up that the transfer was made by Vezin under the authority of the plaintiff.

The master to whom the case was referred found that in 1865 Vezin had bought for Miss Mohr the loan in question, had notified the company that the loan was bought for her and had the certificate put in her name; that the loan was transferred by Vezin in October 1870; that the alleged authority for the transfer was a letter of attorney, dated April 28th 1851, by which it was alleged, Miss Mohr gave Charles Vezin, the elder, full power to sell and transfer her loans and to collect the interest on them, &c., with power of substitution; that on March 4th 1853, Vezin, under this power, appointed his son Charles, as attorney in fact for Miss Mohr; and that Vezin, the elder, died in April 1853.

There was evidence tending to show that this letter of April 1851 was a forgery.

It further appeared that Vezin was in possession of the certificate of loan and surrendered it at the time of the transfer; that in July 1871, Vezin remitted to Miss Mohr $55.50 as interest on this loan; that Vezin had absconded in September 1871, and his estate had been placed in bankruptcy, and that Miss Mohr, before the bringing of this suit, had proved her claim against the estate in the bankrupt court. Miss Mohr was a lady of advanced age and a resident of Bremen.

Upon the coming in of the master's report, the court below made an order that the defendant should reissue to the plaintiff the certificate of loan and pay her the interest due, or should pay her the market value of the certificate on the day of the transfer by Vezin, with interest; and that thereupon the plaintiff should assign to the defendant her claim against the estate of Vezin in bankruptcy.

The defendant below then took this appeal. The case was argued here in January Term 1876. On March 9th 1876, the court made this order :—

"It is ordered that this case be re-argued. In the meantime the counsel will be prepared with authorities to discuss the question of the subsitition of Charles Vezin, Jr., by Charles Vezin, Sr., as attorney for the principal, of whom the latter was attorney in fact; the effect of the death of the latter upon his substitution, and the

sufficiency of the evidence to establish the power from Miss Mohr to Charles Vezin, Sr."

*C. Gibbons,* for the appellant.—Vezin, the elder, had full power to substitute his son as attorney for Miss Mohr; and although she might, at any time, have revoked the appointment, she never did; on the contrary, she ratified it by allowing him to act for her for seventeen years, in buying and selling securities for her and collecting her interest.   It was her duty to have disavowed his agency at once : Bredig *v.* Dubarry, 14 S. & R. 27 ; Porter *v.* Patterson, 3 Harris 229 ;  Childs *v.* Digby, 12 Id. 23 ;  Hall *v.* Vanness, 13 Wright 464 ;  P., W. & B. Railroad Co, *v.* Cowell, 4 Casey 329.

Further, proceedings against Vezin's estate in bankruptcy ratified the agency : Fenemore *v.* U. S., 3 Dall. 357 ; Story's Agency, § 259 ; Billon *v.* Hyde, 1 Atk. 126.

As soon as Vezin, the elder, substituted his son in his place, he ceased to be Miss Mohr's agent.   It follows that *his* death could not affect the appointment.

*J. G. Rosengarten,* for the appellee.—When the power of an agent is revoked, that of a substitute appointed under him is likewise revoked: 2 Livermore's Agency 306 ; Story's Agency, §§ 469, 488.   Death necessarily revoked the power of the elder Vezin : Merrick's Estate, 8 W. & S. 402 ; Wells *v.* Stewart, 5 Binn. 328.

Mr. Justice GORDON delivered the opinion of the court, January 15th 1877.

On the 3d day of October 1865, the appellant, defendant below, issued to Sophia Mohr, a single woman, native of Germany and resident in Bremen, a certificate of its loan of 1844, for $2000. The purchase was made by Charles Vezin for Miss Mohr, so stated by him, in the office of the company, at the time of the purchase, and to him the certificate was delivered, as her representative.   On the 14th of October 1870, Vezin sold this certificate to William C. Longstreth, through a broker, made the proper transfer on the appellant's books, and surrendered the certificate, which was cancelled by the company, and a new one issued in the name of the purchaser.   The plaintiff alleges that this sale and transfer were made without authority on the part of Vezin and the company, and in fraud of her rights ; hence she brings this bill, in order to compel the defendant to restore the certificate or pay the equivalent in cash.   Now, as the company had full notice, not only from the act of its officers in issuing the certificate in the name of Miss Mohr, but from the declarations of Vezin, at the time of the purchase, that this was her property, it lies upon it to show the authority under which it acted in permitting the transfer on its books, and the cancellation of the certificate and re-issue to Longstreth.   That

Vezin had the certificate in his possession and produced it at the time of the transfer, is hardly a circumstance in favor of the justification of the conduct of the company; for it well knew that this property belonged, not to Vezin, but to the plaintiff; it knew that he held it just as he had purchased it—as the agent of Sophia Mohr. But the defendant, not relying upon so weak a staff as this, sets up a power of attorney from the plaintiff to Charles Vezin, father of him who transferred the certificate in controversy, dated at Bremen, April 28th 1851, and purporting to have been executed on that day before the United States consul of that port, by which he was authorized to sell all or any stocks or loans belonging to her or which she might thereafter possess, with a power of substitution. This was followed by a power of attorney executed by Charles Vezin to his son, on the 4th of March 1853, which is remarkable in this, that it is executed, not only in his private right and as partner in the firm of Charles Vezin, Son & Co., but also as attorney in fact, agent, trustee, executor, administrator or assignee " of any other person or persons or otherwise;" but neither persons nor property are specifically designated. Now, admitting this to have been sufficient, at the time of its execution, to carry the power contained in the letters of 1851 over to Charles Vezin, Jr., yet, as Charles Vezin, Sr., died before the date of the sale of the stock, or the purchase of the certificate in question, it is certain the transfer to Longstreth could not have been made thereunder, for that power had been revoked by the death of the grantor. As we learn from the case of Peries v. Aycinena, 3 W. & S. 79, where an attorney has created a substitute, the power of such substitute is necessarily withdrawn by the death of his principal; for the attorney being accountable for the acts of his substitute, since he appoints him, on his own responsibility, to do those things which he was authorized to do, it follows that, when his death occurs, the source of the substitute's power is cut off and fails. So, likewise, it is said in the Roman law, the rule is fully recognised, that a mere power or authority expires with the death of either the principal or agent: Story on Agency, § 491. That the substitution was provided for in the original delegation does not alter the rule; the only exception thereto being where, from the express terms, or from the nature of the power, an inference may arise that the principal intends the substitute shall act for him, notwithstanding the revocation of the authority of the original agent: Id., § 469. We need hardly say that this exception to the rule does not apply in the present case; for nowhere does it appear that Miss Mohr intended that Charles Vezin should act as her agent after his father's death, by virtue of the substitution of the 4th of March 1853, or that she recognised or even knew of such substitution. It follows, therefore, that when the defendant permitted the transfer by Charles Vezin, Jr., on the power from his father, or on the production of

[Lehigh Coal & Nav. Co. v. Mohr.]

the power to his father alone, and received and cancelled the certificate, it did so without authority, and on the personal responsibility of Charles Vezin ; and if this responsibility has proven worthless, the blame rests with the company's own officers. That there were any such laches, on part of the plaintiff, as would amount to a ratification of Vezin's acts, we have failed to see. She was an old lady, resident in Germany, and it does not appear that she had any knowledge, or means of knowledge, of the transaction, until her agent, Mr. Plate, was informed thereof, by the officers of the defendant, in December 1871. And when we consider that, as late as July 1871, some nine months after the sale of the certificate, she received a remittance from Vezin & Co. of $55.50, interest on Lehigh Navigation sixes, $2000, less taxes, and that in this manner she was kept in total ignorance of what had been done, and was thus led to suppose that her securities remained intact, we can readily understand why she did not sooner make demand upon the company for a restoration of her certificate. But, on the other hand, the defendant was fully informed that this was the plaintiff's property, which it was helping Vezin to transfer and put beyond her reach. Furthermore, its officers did know, or, what is the same thing, might have known, but for their gross carelessness, that they were acting without authority. Had they demanded the original power to Vezin the elder, we think it quite probable they would have discovered that no such paper was in existence, and that the copy presented to them, and under which they assumed to act, was manufactured for the occasion. Certain it is that no such power can now be found. Under such circumstances, it would not prove to be a very edifying spectacle, were a court of equity to exonerate this corporation from the consequences of its own folly, and cast them upon a faultless old woman.

The decree of the Court of Common Pleas is affirmed, and it is ordered that the appellant pay the costs.